```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAYON JARVIS,

                            Plaintiff,

       -against-

UNITED STATES OF AMERICA,

                            Defendant.
------------------------------------------------------------x
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 0 6 2012 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**

10-cv-5693 (ENV)

**VITALIANO, D.J.**

Rayon Jarvis is before the Court <u>pro se</u> on his petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for importation of cocaine. For the reasons stated below, the motion is denied.

## BACKGROUND

Jarvis, a citizen of Guyana, arrived at John F. Kennedy International Airport on January 10, 2010. During a routine inspection of Jarvis's two suitcases, Customs and Border Patrol agents discovered 12 packages of "baking powder." Upon further inspection for narcotics, the white substance identified as "baking powder" field-tested positive for cocaine.

Jarvis was charged in a two count indictment with (1) importation of five kilograms or more of cocaine in violation of 21 U.S.C. § 952; and (2) possession with intent to distribute in violation of 21 U.S.C. § 841. On March 16, 2010, Jarvis pled guilty to a lesser-included offense within the count based on § 952. As part of the plea agreement Jarvis (along with his lawyer) signed, he agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 63 months or below." The plea agreement also stipulated

that the appellate waiver would be "binding without regard to the sentencing analysis used by the Court."

During the plea hearing, at which Jarvis was represented by counsel, the Court inquired several times about the quality of his representation throughout the criminal proceeding. Jarvis represented to the Court that he had a full and fair opportunity to discuss his case with counsel and that he was "fully satisfied with the advice and representation" he had received. (See Plea Hearing, 3/16/10, at 5-6.) Moreover, the Court reviewed Jarvis's waiver of his right to appeal or collaterally attack his sentence or conviction:

> THE COURT: Now, we referenced this earlier, but I wanted to check it expressly now. In addition to the possible consequences, there is this real consequence that I wanted to go over expressly, that you also understand that in the event that the court imposes a term of imprisonment of 63 months or below, as a result of your plea agreement, you give up your right to file an appeal or to challenge your conviction or sentence by any petition, . . . collaterally or by writ, that would follow conviction. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(Id. at 15.) Jarvis confirmed, on the record, that he had reviewed the entire plea agreement with his attorney, that he understood his rights and was waiving them, and that he was waiving them voluntarily. (Id. at 11-17.) During the plea hearing, Jarvis allocuted to the elements of the offense charged against him with the Court accepting his guilty plea after finding that Jarvis was acting knowingly and voluntarily, that he understood the consequences of his plea (including the appellate waiver), and that there was a factual basis for his guilty plea.

The Court sentenced Jarvis on September 24, 2010, after hearing arguments from both sides as to the accuracy of the Presentence Investigation Report and appropriate punishment.

Jarvis's counsel argued for a non-guidelines sentence in light of petitioner's personal history and family circumstances, while the government asked for a sentence within the guidelines range of 37-46 months in prison.[1] In light of the "unremarkable" nature of Jarvis's case and the "enormous amount of cocaine" involved, petitioner was sentenced within the guidelines (but at the lowest end) to 37 months' imprisonment, three years of supervised release, and a $100 special assessment. Jarvis did not appeal.

He did, of course, file this § 2255 petition on December 3, 2010. In it, Jarvis argues that he was denied the effective assistance of counsel at his sentencing because his attorney failed to argue that petitioner was entitled to a downward departure as a result of his consent to deportation following his release from prison.

## STANDARD OF REVIEW

A person who has been convicted and is currently a federal prisoner may petition the sentencing court to correct, vacate, or set aside the sentence under 28 U.S.C. § 2255. The grounds for relief are very limited. The § 2255 court may only grant relief if it concludes: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' [or] (4) that the sentence 'is otherwise subject to collateral attack.'" Hill v. United States, 368 U.S. 424, 426-27, 82 S. Ct. 468 (1962). Since Jarvis is acting pro se, his pleadings must be construed liberally to raise the strongest arguments they suggest. See Bertin v. U.S., 478 F.3d 489, 491 (2d Cir. 2007)

---

[1] The plea agreement estimated Jarvis's guidelines range as 51-63 months. The range actually used at sentencing applied the "safety valve" adjustment, reducing the estimated computation by two levels.

(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

*A. Plea Waiver*

Petitioner's first hurdle is insurmountable. It is the fruit of his own bargain with the government. In his written plea deal, Jarvis agreed "not to file an appeal or otherwise challenge, by" § 2255 or otherwise, his conviction or sentence in the event that the Court imposed a term of imprisonment of 63 months or below. The plea agreement added suspenders too, in that Jarvis agreed that his appellate waiver was enforceable "without regard to the sentencing analysis used by the Court."

"It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998) (citing cases). The same reasons for enforcing waivers of direct appeal apply to waivers of collateral attack under § 2255. Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001). Moreover, the Second Circuit has "emphatically" rejected the claim that an appeal waiver in a plea agreement does not apply to an argument of ineffective assistance of counsel at sentencing. Djelevic, 161 F.3d at 107; Wang v. United States, No. 10 Civ. 4425, 2011 WL 73327, at *7 (E.D.N.Y. Jan. 10, 2011). A waiver, however, does not prevent a defendant from attacking the underlying plea itself where it was not knowing and voluntary, see United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005), nor does it bar a claim of ineffective assistance of counsel directed at the process of agreeing to the plea bargain itself, Faife v. United States, No. 10 Civ. 0401, 2010 WL 3912248, at *3-4 (S.D.N.Y. Sept. 22, 2010). A petitioner challenging the underlying plea bargain, however, must "show that the plea agreement was not knowing and voluntary . . .

4

because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (quotations omitted).

Here, Jarvis argues *only* that his counsel was ineffective at his sentencing. Notwithstanding his limiting language arguably waiving any other unpleaded claim for relief based on ineffective assistance, more critically, petitioner offers no evidence to suggest that his representation in entering his plea was tainted by ineffective counsel or for any other reason. Bluntly, the petition contains no allegation of fact that would suggest that his plea was anything but "knowing and voluntary." The Court, moreover, finds not a stitch of evidence in the record on its own review that would do so either.

The record, in fact, is damning. The Court specifically inquired of Jarvis at his plea hearing as to his understanding of the waiver provision *after* explaining its consequences. Jarvis also stated that he was fully satisfied with his representation in coming to the plea agreement. Jarvis's argument of ineffective assistance is, therefore, "nothing more than an attempt to escape an enforceable waiver by collaterally attacking his sentence." Id. He seeks to do precisely what he agreed, as part of his plea bargain, not to if the Court, as it did, imposed a sentence of 63 months or less. See Garcia-Santos, 273 F.3d at 509; see also Sanchez v. United States, No. 08-cv-5060, 2009 WL 5214494, at *3 (E.D.N.Y. Dec. 28, 2009); Faife, 2010 WL 3912248, at *4. The petition dies at the courthouse door.

B. *Ineffective Assistance of Counsel*

To some extent, as outlined above, petitioner does get a small second bite of the apple if he could allege that the agreed to waiver resulted from ineffective assistance. But, as also previewed above, any such claim is meritless. There is no argument or evidence of any error or omission of counsel that rises to the constitutionally deficient proportions necessary to

support a claim of ineffective assistance of counsel.

Plainly, a petitioner must first demonstrate counsel's deficient performance by showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). This requires "that counsel's representation fell below an objective standard of reasonableness," considering "all the circumstances" and "prevailing professional norms." Id. at 688. Second, a defendant must establish that "the deficient performance prejudiced his defense," by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. To do this, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

When assessing a claim of ineffective assistance, courts "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms. Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S. Ct. 2574 (1986). At bottom, a court "should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. (citing Strickland, 466 U.S. at 696)

Jarvis claims with specificity that he was denied effective counsel at his sentencing because his attorney failed to argue for a downward departure based on his consent to

6

deportation following his release from custody. He asserts that, under the guidelines, he was entitled to a downward departure as a result of his consent. As an initial matter, though Jarvis avers he consented to deportation, such consent is not found in his plea agreement and he provides no factual basis for this assertion. Indeed, the government contests that Jarvis consented, creating a factual dispute which, in other circumstances, would require a hearing. No hearing is necessary here, however, because whether Jarvis actually consented or not makes no difference to the disposition of his petition.[2] At the time Jarvis was sentenced, no rule or policy existed entitling him to an offense level reduction for consent to deportation. Further, the Second Circuit has made clear that counsel is not constitutionally deficient for failing to ask for a sentencing reduction that did not exist at the time of sentencing. United States v. Prince, 110 F.3d 921, 926 (2d Cir. 1998).

Under the applicable Federal Sentencing Guidelines, there is no downward departure available for a defendant's consent to deportation following the completion of his sentence. To be sure, "in 1996, the United States Attorneys for the Eastern and Southern Districts of New York . . . adopted a policy of supporting a one-step downward departure . . . for deportable alien defendants who pleaded guilty and consented to deportation as part of their

---

[2] Section 2255 does not automatically entitle a petitioner to a hearing. If it appears that the petition has merit, a hearing should be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See 28 U.S.C. 2255(b); see also R. Gov. Sec. 2255(b) ("[t]he court may dismiss the motion without a hearing "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ."). A hearing is warranted where the petitioner establishes that his claim is plausible. Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). At the same time, the Supreme Court has cautioned that "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510 (1962). No hearing is necessary here because the petition itself establishes that Jarvis is not, as a matter of law, entitled to the relief he seeks, regardless of his consent to be deported. See infra.

7

plea agreements." United States v. Sentamu, 212 F.3d 127, 129 (2d Cir. 2000); see also Manzueta v. United States, No. 00-cv-4082, 2000 WL 1207260, at *1 (E.D.N.Y. July 19, 2000). This policy was, however, discontinued in 1998 as deportation became less burdensome for the government in the wake of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Sentamu, 212 F.3d at 129-30; Manzueta, 2000 WL 1207260, at *1. Furthermore, it is clear that, absent "some colorable, nonfrivolous defense to deportation, . . . consent to deportation . . . is not a permissible basis for departure" from the guidelines. Sentamu, 212 F.3d at 136-37.

Jarvis thus cannot meet even the first prong of the Strickland test because it cannot be said that his attorney "fell below an objective standard of reasonableness," 466 U.S. at 688, by not requesting a legally uncognizable departure from the guidelines. Plus, the Second Circuit has made this clear: "[C]ounsel's failure to raise the issue of a downward departure based on automatic deportation does not amount to constitutional error." Prince, 110 F.3d at 926; Sanchez, 2009 WL 5214494, at 3 (Worse yet for petitioner, the Circuit has unequivocally "stated that the effect of deportation does not justify a downward departure. . . . Thus, counsel was not ineffective for failing to argue for a downward departure [on any basis related to post-conviction deportation]."); Manzueta, 2000 WL 1207260, at *1; Gutierrez-Flores v. United States, No. 97-CIV-5677, 1999 WL 147735, at *5 (S.D.N.Y. March 18, 1999).[3] The

---

[3] Though this Court must construe Jarvis's petition to assert the strongest possible arguments since he is proceeding pro se, the Court finds no suggestion in the record that Jarvis's counsel was deficient prior to sentencing either. Jarvis informed the Court that he fully discussed his plea with his attorney and that he was satisfied with the representation he had received in coming to his plea agreement, that he understood the plea, and that it was voluntary. Prior to sentencing, both in writing and orally, his attorney argued for a sentence below the guidelines range, efforts which clearly bore some fruit since Jarvis was sentenced at the bottom of a range that was already substantially lower than the one contemplated in his plea agreement.

8

ineffectiveness of counsel claimed by petitioner has no basis in fact or law. Finally, reviewing the record beyond petitioner's claim of error, there is nothing that would remotely suggest a basis to support any other claim of error of any kind.

## CONCLUSION

For the foregoing reasons, Rayon Jarvis's petition under § 2255 is dismissed and the motion to vacate, set aside, or correct his sentence is denied.

The Clerk is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
       December 18, 2011

/S/
_____
ERIC N. VITALIANO
United States District Judge